Glenshaw Glass Company, Inc., a corporation v. Commissioner.
Glenshaw Glass Co. v. Commissioner
Docket No. 6994.
United States Tax Court
1946 Tax Ct. Memo LEXIS 58; 5 T.C.M. (CCH) 864; T.C.M. (RIA) 46245; October 15, 1946
*58 The salaries and bonuses, totaling $67,000, paid by petitioner as compensation to its three executives, is held to be properly deductible as being reasonable compensation for the fiscal year ending September 30, 1941. The deduction of $60,497.85, in addition to the total of $67,000 fixed salaries paid to the same executives in the fiscal year ending September 30, 1942, is denied because petitioner has not carried its burden of establishing that such amount was not, in fact, distributed as profits in the guise of compensation. Ben W. Heineman, Esq., 135 South La Salle St., Chicago 3, Ill., for the petitioner. Homer F. Benson, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income tax, declared value excess-profits tax, and excess-profits tax for the fiscal years ending September 30, 1941 and 1942, respectively as follows: Declared Value
Excess-Profits
Period
Income Tax
Excess-Profits Tax
Tax
Sept. 30, 1941
$21,845.51
$3,966.25
$23,658.30
Sept. 30, 1942
5,286.92
791.13
75,552.52
The only issue submitted is the reasonableness of the compensation *59 paid to three of petitioner's officers in the respective taxable periods. The case was submitted upon oral testimony and exhibits. Findings of Fact Petitioner is a Pennsylvania corporation, organized in 1900 as successor to a limited association formed in 1895. Since its incorporation it has engaged in the manufacture of glass bottles and glass containers. Its returns for the respective periods involved were filed with the collector of internal revenue for the 23rd district of Pennsylvania, at Pittsburgh, Pennsylvania. Petitioner's three executives were the Meyer brothers, Samuel B., George W., and Albert C., who had been associated with petitioner for 40, 35 and 46 years, respectively. During the taxable periods involved, Samuel B. was president, treasurer, general manager and sales manager; George W. was secretary, assistant treasurer and assistant manager in complete charge of production; and Albert C. was in charge of engineering, designing and product improvement. These three brothers were eminently qualified to conduct the business of petitioner. Under their progressive management petitioner made a net profit in every year for 20 years ending with 1942. For the same period *60 it paid a dividend in every year except 1934. In the two taxable years in question, the dividend amounted to 16 per cent upon the capital stock. The book value of the shares was less than $60 per share in 1921, but it gradually increased to $212 in 1941 and $234 in 1942. Petitioner had an up-to-date plant in which the most modern machinery and equipment had been installed. There has been a consistent and material increase in plant and equipment all of which has been financed from earnings. During the taxable years and for many years prior thereto petitioner had been engaged in 24-hour operation seven days a week, employing an average of from 350 to 375 employees. The three executives had no executive assistants. In consequence of the continuous operation of the plant and the lack of these assistants, the three executive officers worked long hours, taking no vacations in the taxable years and, with one exception, no vacation in 10 or 15 years prior thereto. During the taxable years and continuously since 1913, the outstanding shares of the capital stock consisted of 6,000. In the taxable years all the shares except 173 were held by the Meyer, Beck and Berner families, as follows: *61 Meyer Family
3,432
Beck Family
1,437
Berner Family
958
Others
173
Total
6,000
In 1939, a voting trust was formed with the three Meyer executives holding the voting power. This trust consisted of 3,017 shares, or about 51 per cent of the total shares. Of the 3,017 shares, 2,958 were owned by the Meyer family, 48 were owned by Thomas A. Murphy, and 11 shares were owned by John W. Heinl, Jr., both of whom were employees of the petitioner. Petitioner's board of directors, in the fiscal year 1941, consisted of the three Meyer executives; Dr. J. Howard Beck, a relative of Samuel Meyer's wife and a son of a former officer and director; John A. Berner, also a son of a former president and director; Ruth Meyer and John W. Heinl, Jr., an employee. Ruth Meyer was not present at the meeting held August 20, 1941 when the additional compensation was voted. The board of directors for the fiscal year 1942 was the same, except that Thomas A. Murphy, an employee, was elected in place of Ruth Meyer. The following table shows the net sales, the net income before executives' compensation, the total salaries paid the three Meyer executives, the earned surplus and the cash *62 dividends paid during the 10-year period, 1933 to 1942, inclusive: Net Income
Before Executive
Cash
Salaries and
Total Executive
Earned
Dividend
Year
Net Sales
Federal Taxes
Salaries
Surplus
Paid
1933
$ 673,751.63
$ 93,259.45
$ 27,900.00
$386,805.45
$4.50
1934
692,414.69
36,011.25
20,925.00
394,544.74
0.00
1935
1,099,892.20
31,614.78
27,900.00
395,087.72
1.00
1936
1,374,909.55
133,392.57
27,900.00
468,939.85
4.00
1937
1,908,865.07
319,009.42
31,000.00
588,103.42
12.47
1938
1,622,277.34
104,627.55
37,750.00
616,281.11
1.00
1939
1,912,698.81
209,953.39
37,000.00
764,850.18
2.25
1940
2,008,039.56
179,977.75
37,000.00
858,252.81
4.00
1941
2,416,310.93
249,643.24
67,000.00
950,361.84
8.00
1942
2,700,910.21
447,533.62
127,479.85
983,012.09
8.00
For the fiscal year ending September 30, 1941, the salary of Samuel B. Meyer had been fixed at $14,000, George W. Meyer at $12,000 and Albert C. Meyer at $11,000 per annum. At a meeting of petitioner's board of directors held on August 20, 1941, the following resolution relating to additional compensation was unanimously adopted: *63 RESOLVED, That the recommendations of the Executive Committee be and the same are hereby approved and adopted, and the Treasurer be and hereby is authorized to make payments accordingly, to wit: Samuel B. Meyer, President, Treasurer and General Manager $10,000.00, Albert C. Meyer, Vice-President and Assistant Treasurer $10,000.00, George W. Meyer, Secretary and Assistant Treasurer $10,000, and the various department heads the sum of $10,000.00. This action of the directors of petitioner was ratified by the stockholders at a regularly called meeting on November 19, 1941. At a meeting of petitioner's board of directors held on February 4, 1942, three separate resolutions respecting the compensation of the three Meyer executives were adopted, each respective executive refraining from casting any vote upon the resolution pertaining to his particular compensation. The resolution respecting the compensation to be paid Samuel B. Meyer is as follows: BE IT RESOLVED, that the compensation of SAMUEL B. MEYER, President of the Company, for the fiscal year ending September 30, 1942, shall be (a) A fixed sum of Twenty-four Thousand Dollars ($24,000.00) payable in monthly, or such other *64 installments, as the officers of this Company shall determine, and (b) An additional sum, equal to seven and one-half per cent (7 1/2%) of the net profits of the Company for the fiscal year ending September 30, 1942, determined in accordance with standard accounting practice, but 1. After the deduction of the sum of Fortyfive Thousand Dollars ($45,000.00); 2. Before provision for, or deduction on account of, Federal Income, Surtaxes and Excess Profits Taxes and Pennsylvania Income Taxes; 3. Before the deduction of any portion of the additional sum provided to be paid to SAMUEL B. MEYER under the provisions of subparagraph (b) of this resolution; and 4. Before the deduction of any portion of additional compensation based on a percentage of the net profits of the Company to be paid to GEORGE W. MEYER and ALBERT C. MEYER. (c) The additional compensation provided for under subparagraph (b) of this resolution shall be paid to SAMUEL B. MEYER on or before November 15, 1942. (d) This resolution shall supersede the resolution adopted by the Board of Directors of this Company on November 19, 1941, with respect to the compensation to be paid to SAMUEL B. MEYER for the fiscal year *65 ending September 30, 1942. The resolutions with respect to the compensation of George W. Meyer and Albert C. Meyer were similar in tenor and purport. The fixed amount payable to George W. was $22,000 and to Albert C. was $21,000. These resolutions of the directors were ratified by the stockholders at their regularly called meeting on November 18, 1942. Later in the year 7 1/2 per cent of net profits based on a certain formula was set aside for payment of bonuses to certain key employees. The compensation paid to the three Meyer executives, totaling $67,000 for the fiscal years ending September 30, 1941 and September 30, 1942, respectively, was reasonable. Opinion In the respective taxable years 1941 and 1942, the respondent disallowed, as unreasonable, the amounts deducted as compensation paid by petitioner to its three executive officers, under section 23 (a) (1) (A), I.R.C., to the extent the amounts exceeded the compensation of $37,000 paid in the prior two years. The amount disallowed in 1941 was $30,000, and in 1942, $90,479.85. Petitioner contends the compensation paid was not excessive. It endeavors to sustain its theory on the grounds that the *66 compensation paid in prior years was unreasonably low, because of the desire to devote a large part of the earnings to enlarge and modernize the plant and its equipment; net sales had increased approximately 34 per cent in the taxable years in question; and that the amounts paid were authorized by an independent board of directors. Where the record establishes the latter fact, we have been reluctant to substitute our judgment for that of the directors. We do not, however, regard petitioner's board as sufficiently independent to find that the compensation was fixed in an arm's length transaction. Of the seven directors only John A. Berner and J. Howard Beck could be said to be adversely affected by the action taken. The remaining five, in 1941, consisted of the three Meyer executives whose compensation is in question, a sister, Ruth Meyer, and John W. Heinl, Jr., a key employee, who was a recipient of one of the largest shares of the bonus voted at the meeting. In 1942 the board of directors was the same, except that Ruth Meyer's place had been taken by Thomas A. Murphy, another key employee who received a large share of the bonus voted for employees. Furthermore, the 11 and 48 shares *67 of stock owned by directors John W. Heinl, Jr. and Thomas A. Murphy, respectively, had been deposited in the voting trust controlled by the three Meyer executives which, we think, is also indicative of their dependence on the Meyer brothers. Cf. Crescent Bed Co., Inc. v. Commissioner, 133 Fed. (2d) 424. Petitioner also offered expert testimony on the reasonableness of the compensation paid. This testimony established the fact that the three Meyer executives were able, industrious and highly efficient executives in the glass industry, which fact the respondent readily conceded. Each expert witness expressed the opinion the salaries paid were reasonable in the respective taxable years in question. We were not favorably impressed with this testimony. There is nothing in this record indicating to us that any of these witnesses were qualified to express an opinion, entitled to much weight, on salaries of executives engaged in a comparable business. At the trial we intimated the lack of such qualifications, but petitioner made no effort to supply the evidence that would, or at least could, have filled this important gap. Nor is petitioner's argument that the salaries were unreasonably *68 low very impressive. The three Meyer executives not only had stock control, but control of the board of directors. Where such factors are present we think it unlikely these officers felt they were being so grossly underpaid as to justify the increase in their total salaries from $37,000 to $127,479. The resolution of the Board increasing their compensation makes no mention of previous inadequate recompense. We think this record fairly establishes that these able and efficient executives were entitled to an increase in their compensation in 1941 over that of the two previous years. We feel that the bonus of $10,000 voted and paid to each of them, when added to their fixed salaries, did not render the amount thus paid to them as compensation unreasonable as such. Accordingly, for the fiscal year ending September 30, 1941, we have found that the total compensation of $67,000 was reasonable. It follows that such amount was deductible, as petitioner contends. We find, however, no additional facts that would justify an additional increase for the fiscal year ending September 30, 1942. The only additional fact petitioner points out is the increase in the amount of net sales. This increased *69 dollar amount was due, no doubt, to higher prices and to the increased demand for glass containers because of inability to secure tin cans, owing to the tin demand for war uses and the interference with the source of supply caused by the war. The net sales increased from $2,008,039.56 in 1940 to $2,700,910 in 1942, or approximately 34 per cent. The compensation of the three executives increased from $37,000 in 1940 to $127,479.85 in 1942, or approximately 244 per cent. The fixed salaries of the three executives for the fiscal year 1942 totaled $67,000, or the amount of fixed salaries plus the total bonuses of $30,000 paid in 1941. In addition, the board provided for a payment of 7 1/2 per cent of the net profits determined under a certain prescribed formula. This percentage amounted to approximately $60,000, or $20,000 to each over the amount of his fixed compensation. The additional compensation of 7 1/2 per cent of certain net profit was not fixed at the commencement of the fiscal year but after operational results of the first quarter of the fiscal year 1942 were known. The 7 1/2 per cent was not to be paid until after the deduction of $45,000, or an amount sufficient to pay a *70 dividend of $7.50 per share on the 6,000 outstanding shares. Although the fixed salaries of the three executives varied, the $60,497.85 resulting from the operation of the 7 1/2 per cent net profit formula was divided equally among them. Of course if the amount of this item of $60,497.85 was not paid to these three executives qua compensation but was distributed to them as corporate profits in the guise of compensation, that fact would defeat the deduction under section 23 (a) (1) (A), supra. The distribution of profits, is not deductible as an ordinary and necessary expense of a business. Petitioner concedes this but argues that since the 7 1/2 per cent fund was not distributed in accordance with stock holdings, the distribution could not be one of profits because it was done by authority of the directors. Petitioner, however, has the burden of proof. And, this record shows that the action of the directors authorizing the distribution of this fund was duly ratified by the stockholders at their meeting. See Speier v. United States, 9 Fed. Supp. 1020; Goodnow & Co., 5 B.T.A. 1154; Ida L. Dowling et al., 13 B.T.A. 787; L. Schepp Co., 25 B.T.A. 419; *71 Long Island Drug Co., 35 B.T.A. 328. In the light of all the evidence presented by this record, we think it has failed to carry that burden. We are not convinced that the $60,497.85 [sic] was not a distribution of corporate profits in the guise of compensation for services. Consequently, to that extent the respondent properly disallowed a deduction as an ordinary and necessary expense of the business in the taxable period ending September 30, 1942. It is thus unnecessary to discuss petitioner's further query as to whether respondent has statutory authority to disallow the deduction of compensation paid in good faith as the purchase price of personal services actually rendered. Decision will be entered under Rule 50.